**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>*Petitioner*,<br><br>v.<br><br>PLATINUM PLUS PRINTING, LLC,<br><br>*Respondent*. | Misc. Action No. 21-92 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion by the Federal Trade Commission ("FTC" or "Commission") to enforce a subpoena *duces tecum* against Platinum Plus Printing, LLC ("PPP"). Dkt. 1. For the reasons set forth below, the Court will **GRANT** the FTC's motion.

**I.**

Under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq*., and its implementing regulations, 16 C.F.R. ch. 1, an administrative adjudication "is commenced when an affirmative vote is taken by the Commission to issue a complaint," 16 C.F.R. § 3.11(a); *see also* 15 U.S.C. § 45. Exercising this authority, the Commission issued an administrative complaint on August 7, 2020, against Traffic Jam Events, LLC ("Traffic Jam"), a Louisiana limited liability company and David Jeansonne II, the owner, managing member, and president of Traffic Jam. Dkt. 1 at 5 & n.2; Dkt. 1-2 at 2–11. The complaint alleges that the respondents (1) violated the FTC Act by promoting car dealerships by deceptively representing "that consumers are receiving official COVID-19 stimulus information; that consumers are receiving COVID-19 stimulus relief, including stimulus checks; and that [r]espondents are affiliated or otherwise associated with, or approved by, the government,"

Dkt. 1-2 at 7; (2) violated the FTC Act by deceptively representing "that consumers have won a specific prize that can be collected by visiting a particular dealership," *id*.; and (3) violated the Truth in Lending Act, 15 U.S.C. § 1664, and Regulation Z, 12 C.F.R. § 226.24(d), by failing to provide certain disclosures required with the promotion of closed-end credit, *id*. at 8. Dkt. 1 at 6. Traffic Jam allegedly disseminated the mailers to generate business for car dealerships in Florida and Alabama. Dkt. 1-2 at 3–5. The Commission issued the administrative complaint from its headquarters in Washington, D.C., and designated that the hearing would take place at the same location. Dkt. 1 at 6.

After the Commission issued the administrative complaint, Complaint Counsel—the FTC lawyers responsible for prosecuting the administrative action—issued a subpoena *duces tecum* to PPP, "[b]ased on evidence showing that PPP assisted [Traffic Jam] in disseminating the mailers at issue." *Id.* at 2. The subpoena was issued pursuant to 16 C.F.R. § 3.34, which authorizes "[c]ounsel for a party" to an ongoing administrative proceeding to "sign and issue a subpoena, on a form provided by the Secretary, commanding a person to produce and permit inspection and copying of designated books, documents, or tangible things," and which permits the recipient of the subpoena to move "to limit or quash the subpoena . . . within the earlier of 10 days after service thereof or the time for compliance therewith." Under the Rules of Practice for Adjudicative Proceeding, if "a nonparty fails to comply with a subpoena," the Administrative Law Judge ("ALJ") may "certify to the Commission a request that a court enforcement of the subpoena . . . be sought." 16 C.F.R. § 3.38(c). The full Commission then decides whether to authorize its General Counsel to take appropriate enforcement action in federal district court pursuant to 15 U.S.C. § 49.

According to the Commission, PPP is a Minnesota limited liability company that is

managed by Jeansonne, who, as noted above, is also the "owner, managing member, and president of Traffic Jam." Dkt. 1 at 5. The two companies also allegedly share a Louisiana mailing address. *Id.* "The purpose of the subpoena was to obtain further evidence showing a relationship between PPP and [Traffic Jam] and Jeansonne;" "to determine whether PPP assisted [Traffic Jam] and Jeansonne in the alleged deceptive conduct;" and to determine "whether to seek leave to amend the complaint to add PPP as a respondent." *Id.* at 6. To that end, the subpoena seeks the production of twelve categories of documents. *Id.* at 7; Dkt. 1-2 at 16–17. Among other things, it seeks documents "sufficient to show the corporate structure, ownership, officers, and directors of" PPP, "including . . . any relationship with Traffic Jam" or Jeansonne; documents "sufficient to show all Agreements between" PPP and Traffic Jam or Jeansonne; and documents relating to Traffic Jam or advertisements or promotion material prepared by PPP for the benefit of Traffic Jam or its clients. Dkt. 1-2 at 16–17.

PPP failed to produce the requested information, and Complaint Counsel filed a motion to compel production before the ALJ presiding over the administrative proceeding. Dkt. 1 at 8. The ALJ, however, concluded that he lacked authority to enforce the motion, denied the motion to compel, but subsequently certified Complaint Counsel's request to enforce the subpoena to the full Commission. *Id.* at 8–10. On June 9, 2021, the Commission "accepted the certification and directed the FTC's Office of General Counsel to seek enforcement of the subpoena in federal district court." *Id.* at 12. Lawyers from the Office of General Counsel, then, filed the instant petition before this Court, seeking an order enforcing the subpoena. Dkt. 1.

PPP opposes the petition on both jurisdictional and substantive grounds. It first argues that this Court lacks jurisdiction "[b]ecause the subject of the inquiry is not situated in the

3

District of Columbia." Dkt. 5 at 2; *id.* at 1–3. And, failing that, it argues that the subpoena is overbroad and seeks information that is not relevant to a pending proceeding. *Id.* at 4–11. As explained below, neither contention is convincing.

## II.

Section 9 of the FTC Act, 15 U.S.C. § 49, grants the Commission and "its duly authorized agent or agents" the authority to access "any documentary evidence of any person, partnership, or corporation being investigated or proceeded against" and, if necessary, "to require by subpoena . . . the production of all such documentary evidence relating to any matter under investigation" and to require the production of such evidence "at any designated place of hearing." Moreover, "in case of disobedience of a subpoena," the Act further authorizes the Commission to "invoke the aid of any court of the United States in requiring . . . the production of documentary evidence." *Id.* And, of particular relevance here, the Act provides that

> [a]ny of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation issue an order requiring such person, partnership, or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question.

*Id.* The principal question posed by the Commission's petition and PPP's response is whether this Court—as opposed to a federal district court in Minnesota or perhaps Louisiana—sits "within the jurisdiction" where the relevant "inquiry is [being] carried on."

In PPP's view, this Court lacks authority to enforce the pending subpoena because PPP is a Minnesota company with no connection to the District of Columbia and "the subject matter of the underlying adjudication is located in the Southeastern United States, specifically Alabama and Florida, where the advertising material are alleged to have been sent, and Louisiana, where Traffic Jams . . . is headquartered." Dkt. 5 at 2. In support of this contention,

4

PPP points to the Seventh Circuit's decision in *FTC v. MacArthur*, 532 F.2d 1135 (7th Cir. 1976), and the Northern District of California's decision in *FTC v. W. Gen. Dairies, Inc.*, 432 F. Supp. 31 (N.D. Cal. 1977), both of which hold that "[t]he test whether the Commission is undertaking an inquiry in a particular place is whether that place and the activities occurring there bear a reasonably relation to the subject matter of the investigation," *MacArthur*, 532 F.2d at 1140; *W. Gen. Dairies, Inc.*, 432 F. Supp. at 34 (quoting same). And, here, according to PPP, the "subject matter of the investigation"—the preparation and mailing of misleading advertisements—has no relationship to the District of Columbia.

In construing identical language found in other statutes, the D.C. Circuit has shed substantial light on this question. To start, the D.C. Circuit agrees that, "[w]here the inquiry is an agency investigation, not a formal hearing," the court must "focus on, among other things, the location of the subject matter of the inquiry." *NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1201 (D.C. Cir. 2006). But, "if an actual hearing is underway before an administrative law judge, and evidence is being presented for the judge to examine on the record, then the location of that hearing is the location of the inquiry." *Id.* at 1200. "[I]n that case, the 'inquiry' is the hearing itself, and evidence to be offered at the hearing is the subject matter of the inquiry." *Id.*

Here, all agree that an administrative hearing is underway, and, indeed, the subpoena at issue was issued under the Commission's Rules of Practice for Adjudicative Proceeding, 16 C.F.R. § 3.34(b); Dkt. 1-2 at 40. This enforcement action, moreover, was authorized through the process applicable to adjudicative proceedings: the ALJ concluded that a "nonparty"—PPP—had "fail[ed] to comply with [the] subpoena," 16 C.F.R. § 3.38(c); he "certif [ied] to the Commission a request that" it authorize an action to enforce the subpoena in federal court, *id.*;

5

*see also* Dkt. 1-2 at 170–75; and the full Commission "agree[d] with the ALJ's conclusion," found that the subpoena "may be reasonably expected to yield information relevant to the allegations of the Complaint" and that "the subpoena is proper;" and, accordingly, directed that the FTC "General Counsel take appropriate action to enforce in federal district court Complaint Counsel's subpoena *duces tecum* to Platinum Plus Printing, LLC," Dkt. 1-2 at 179–80.

Although PPP acknowledges that an action to enforce an administrative proceeding brought in aid of an ongoing adjudicative proceeding may be brought in the jurisdiction where the proceeding is pending, it argues that this case is different because PPP is no mere third-party witness—rather, in PPP's view, it is now a target of an FTC investigation, and, as a result, the judicial precedent governing investigations, as opposed to ongoing adjudicative proceedings, is controlling. At oral argument, PPP explained that its characterization of the Commission's actual purpose is not conjectural; to the contrary, at least in PPP's view, the Commission's own reply brief proves PPP's point. There, the FTC General Counsel wrote:

> For the reasons discussed in the Commission's initial petition and supporting memorandum, the subpoena specifications here are clearly reasonably relevant to the complaint and, more specifically, to questions of PPP's involvement in the alleged wrongdoing and whether PPP should be added as a defendant.

and

> Finally, this Court should not overlook that the key purposes of the subpoena are to assess PPP's relationship to Traffic Jam Events and to determine whether to add PPP as a defendant in its own right.

Dkt. 8 at 4, 8.

PPP's argument fails for several reasons. First, what matters for present purposes is not the arguments that the FTC General Counsel pressed in its reply brief but, rather, the reasons Complaint Counsel gave in seeking the discovery and, more importantly, the reasons Commission gave when it authorized the enforcement action. To be sure, the Commission did

6

acknowledge that the discovery would permit Complaint Counsel to "evaluat[e] whether to seek leave to amend the Complaint to add PPP as a respondent." Dkt. 1-2 at 180. But that was far from the only purpose—or even the principal purpose—that the Commission identified. To the contrary, as noted above, the Commission found that the documents that the subpoena seeks "may be reasonably expected to yield information relevant to the allegations of the complaint, to the proposed relief, or to the defenses of any respondent." *Id.* at 179. The Commission noted, for example, that "documents about PPP's creation of advertising materials for Respondents may be relevant to advertisement substantiation or to Respondents' knowledge and intent;" that documents "about PPP's communications with Respondents' clients or customers may lead to relevant information regarding the advertisements' materiality or Respondents' knowledge and intent;" and that documents about "PPP's corporate structure, relationship with the Respondents, and payments between Respondents and PPP may be helpful to determining relevant actors' liability or drafting an appropriate remedy." *Id.* at 179–80. Given the Commission's understanding that one of the two Respondents in the ongoing proceeding—David Jeansonne II—is also "PPP's manager," Dkt. 1 at 5, it is far from surprising that Complaint Counsel seeks discovery regarding PPP, as its actions might bear on the pending charges.

Second, the fact that the Complaint Counsel might seek to amend the administrative complaint to add PPP does not alter the location where the "inquiry is [being] carried on" or transform Complaint Counsel's adjudicative subpoenas into investigative subpoenas. The Court does not doubt that the subpoenas are "investigative" in the sense that Complaint Counsel is seeking information or documentation that they currently lack. But that is the nature of discovery, including discovery that it sought and obtained in the course of pending adjudication. For similar reasons, the possibility that Complaint Counsel might seek to amend

7

the administrative complaint to add PPP as a third respondent does not alter the fact that the discovery is sought in the context of an ongoing adjudicative proceeding.  As in *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 249 (D.C. Cir. 2005), "the Commission's activities regarding the subpoena at issue were conducted overwhelmingly in the District of Columbia: The subpoena was signed, sealed, and issued in the District of Columbia, the ALJ's rulings on [the Commission's motion to enforce was] issued in the District of Columbia, and the Commission's certification of the subpoena for judicial enforcement occurred in the District of Columbia."  And, "[b]ecause . . . the Commission conducted the 'administrative activities essential to the investigation in [the District of Columbia], . . . the district court here ha[s] subject matter jurisdiction under" 15 U.S.C. § 49.  *ASAT, Inc.*, 411 F.3d at 249–50.

Finally, PPP's jurisdictional theory would itself test "the bound[s] of reasonableness." *FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 857 (D.C. Cir. 1979) (quoting *MacArthur*, 532 F.2d at 1140).  Under PPP's theory, courts must attempt to step into the shoes of Complaint Counsel and ask, with respect to each discovery request, whether all or some portion of the request will be used to support the pending adjudication and whether all or some of the request might be used to amend the pending complaint.  That is not merely the case with respect to a subpoena issued to a possible new target, moreover; it would apply, as well, to subpoenas directed at Traffic Jam, Jeansonne, or a third-party seeking discovery that might be used to amend the complaint to assert claims against PPP.  If adopted, that rule would invite substantial disruption in ongoing adjudicative proceedings.  The rule that the Commission advocates, in contrast, promotes "uniformity in the application of the law[,] economy of judicial administration," and administrative efficiency.  *FTC v. Browning*, 435 F.2d 96, 100 (D.C. Cir. 1970).

The Court, accordingly, concludes that it has subject-matter jurisdiction to enforce the Complaint Counsel's subpoena for production of documentary material pursuant to the Commission's Rules of Practice for Adjudicative Proceedings, 16 C.F.R. § 3.34.

### III.

"It is well established that a district court must enforce a federal agency's investigative subpoena if the information sought is 'reasonably relevant.'" *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 872, 873 n. 23 (D.C. Cir. 1977) (en banc)). In other words, the Court must enforce the subpoena unless it is "'plainly incompetent or irrelevant to any lawful purpose' of the [agency]" or unless it is "unduly burdensome." *Id.* (quoting *Texaco, Inc.*, 555 F.2d at 872). The Court must accept an "agency's own appraisal of relevancy," moreover, unless that assessment is "obviously wrong." *Id.* (quoting *FTC v. Carter*, 636 F.2d 781, 787–88 (D.C. Cir. 1980)).

Here, the full Commission considered each of request for production and, as explained above, it concluded that the subpoena "may be reasonably expected to yield information relevant to the allegations of the complaint." Dkt. 1-2 at 179–80 & n.2. With respect to each category, moreover, the Commission explained the potential relevance of the request to the pending proceeding, *id.* at 179–80, and it cited to judicial precedent permitting "discovery regarding [the] nonparties' corporate structure, corporate governance, and relationship to defendants [to] show that [the] nonparties were interrelated with defendants and should be added to the lawsuit as real parties in interest," *id.* at 180 (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005)). And, the Commission agreed with the ALJ's assessment that "the discovery sought is not unreasonably cumulative or duplicative or obtainable from some other source that is more convenient, less burdensome, or

9

less expensive." *Id.*

The Commission's conclusions are well reasoned and are not, by any measure, "obviously wrong." To the contrary, the Court agrees that the discovery at issue is both relevant to the ongoing proceeding and not unduly burdensome. The Commission seeks information regarding the structure, relationships, and activity of an entity that is managed by one of the current Respondents, that shares an address with the other Respondent, and that may have been involved in the wrongdoing alleged in the Complaint. The fact that Complaint Counsel might use the discovery in seeking to amend the Complaint to add PPP as a party does not render the discovery irrelevant or unduly burdensome; indeed, it supports the Commission's conclusion that the discovery relates to the ongoing proceeding and that will assist in the orderly and efficient resolution of the pending adjudication.

The Court, accordingly, concludes that PPP has failed to meet its burden of showing that these requests are irrelevant or unreasonably broad or cumulative. *Texaco, Inc.*, 555 F.2d at 882.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Commission's Petition for an Order Enforcing Subpoena Duces Tecum and **ORDERS** that Platinum Plus Printing, LLC, respond in full to the pending subpoena on or before August 13, 2021.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 3, 2021